NO. 07-02-0421-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 25, 2003



______________________________




IN THE MATTER OF THE MARRIAGE OF 


PAUL N. BROGDON AND BRENDA BROGDON






 _________________________________



FROM THE 317TH DISTRICT COURT OF JEFFERSON COUNTY;



NO. C-128,685; HONORABLE LARRY THORNE, JUDGE



_______________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)

MEMORANDUM OPINION (2)


 Appellant Paul N. Brogdon presents nine points of error seeking to reverse a
judgment that he pay Brenda Chance, formerly Brenda Brogdon, $55,664 plus $750 costs
and bearing ten percent interest. By his points of error, Paul asserts the trial court erred as
a matter of law (1) by substantively changing the terms of the 1986 divorce decree and
QDRO (3) after it had lost plenary jurisdiction; (2) by substantively changing the express
terms of the 1986 divorce decree and QDRO to re-allocate his savings plan benefits
contrary to Texas law; (3) in substantively changing the terms of the decree because such
change was barred by res judicata; (4) by giving retroactive effect to its clarification order;
(5) by assessing interest in its September 4, 2002 order at ten percent requiring a remittitur
and reformation of judgment if merited; (6) by reducing an enforceable QDRO to a money
judgment without additional service of process: (7) in awarding Brenda a proportionate part
of his first distribution from his savings plan because the 1986 decree, QDRO, and May
17, 2002 findings awarded said distribution exclusively to him as his separate property; and
(8) in its calculations under ERISA (4) requiring a suggestion of remittitur or a reversal and
remand for proper recalculation. By his ninth point, Paul requests that if this Court
remands the matter to the trial court for recalculation, it do so with additional instructions
in light of the uncertainty of the actuarial assumptions being employed in the deposition
evidence of non-attorneys being embraced by the trial court. Based upon the rationale
expressed herein, we affirm the judgment signed September 4, 2002. 

 Brenda and Paul were divorced in 1986 and their decree contained a QDRO which,
among other provisions, awarded Brenda one-half of the interest in Paul's Chevron Profit
Sharing/Savings Plan. Several months after the divorce, Chevron's attorneys informed
Brenda's attorney that in order for the decree to qualify as a QDRO, both parties and their
attorneys needed to sign an agreement letter. By letter dated December 15, 1986, to
Paul's attorney, Brenda's attorney requested Paul's signature and indicated that as soon
as he signed, Brenda would also sign and the letter would be returned to Chevron's
attorneys. A second letter requesting Paul's signature was again sent on January 28,
1987. The letter, however, remained unsigned. Brenda testified that she believed she was
not eligible to receive her share of the savings plan until Paul reached retirement age; thus,
she took no further action until she sought new counsel in 1999 in response to a letter from
Chevron explaining that the agreement letter had not been signed and that because Paul
had made withdrawals from the plan, the funds were insufficient to cover her share. (5) 
Brenda's new attorney wrote Paul's attorney again requesting that he sign the agreement
letter within seven days, threatening legal action if he failed to do so. Paul did not comply
and Brenda moved to enforce the judgment. On January 19, 2000, the trial court signed
an order compelling Paul to sign. After Brenda's motion was amended a third time, the trial
court heard evidence and on September 4, 2002, signed a money judgment awarding her
$55,664 (6) plus costs and interest at the rate of ten percent annually. A week later the trial
court signed a QDRO containing a notice to Chevron's Plan Administrator that the QDRO
was not an agreement between the parties, but was in fact an order of the court that did
not require the parties' signatures.

 Before we address the issues, we first review portions of record applicable to most,
if not all, of Paul's issues. At the hearing on May 17, 2002, the trial court heard Brenda's
third amended motion to enforce judgment, at which Brenda and Paul both appeared and
testified. At that time, Paul's pleadings included a general denial, a specific denial that the
QDRO is an instrument of the Court or that it needs to be modified, and a prayer for
general relief and attorney's fees. His pleadings, however, did not raise any affirmative
defenses, i.e. preemption of state law by ERISA, res judicata, or a plea to the jurisdiction
of the court. Before announcing ready, counsel for Brenda outlined her position. Then,
counsel for Paul advised the court:

 1. The history stated by Brenda's attorney was substantially correct;

 2. Acknowledge no real fact disputes;

 3. Paul made withdrawals under the erroneous assumption that Chevron
had sent him only his portion of the money; and

 4. Paul "obviously got some money that this lady was entitled to. 
Unquestionably that occurred."

 

Then, after the court announced:


 So , what we've got mistake of fact, we've got equity, unjust enrichment-


counsel for Paul replied "[a]bsolutely." These statements of counsel constitute admissions
of undisputed facts. See Provident Life & Accident Ins. Co. v. Hazlitt, 147 Tex. 426, 216
S.W.2d 805, 807 (1949). Following the pretrial announcements, counsel for both parties
announced ready. After the judgment was signed on September 4, 2002, Paul did not file
a motion for new trial. 

 Initially, we note that where, as here, findings of fact are neither filed nor requested,
the judgment of the trial court implies all necessary findings to support it. IKB Industries
v. Pro-Line Corp., 938 S.W.2d 440, 445 (Tex. 1997). However, when a reporter's record
is a part of the record, the legal and factual sufficiency of the implied findings may be
challenged on appeal the same as jury findings or a trial court's findings of fact. Roberson
v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989). At the conclusion of the trial, the court
announced its findings that it had jurisdiction of the matter under sections 9.002, 9.006,
and 9.008 of the Texas Family Code Annotated (Vernon 1998), and that 50 percent of
Paul's Chevron plans had been awarded to Brenda under the 1986 decree. It also found:


 Paul had legitimately removed some of his money from the plan;
 the remainder of the money in the account that remained over the
years belonged to Brenda;
 all stock splits, interests, any increases in value in that account
belonged to Brenda;
 any money contributed over the previous 18 months (no evidence as
to how much) belonged to Paul;
 any money withdrawn the court was not made aware of would be
taken from the amount contributed by Paul over the previous 18
months; and
 Brenda's total award of money that accumulated over the years is
$87,000.


 

The court announced that it was not making any award of any separate property money
that Paul contributed. By his "matter of law points" Paul does not challenge the legal or
factual sufficiency of the evidence to support the judgment or QDRO. 

 By points of error one and two, Paul asserts the trial court erred in substantively
changing the terms of the 1986 decree and QDRO after it had lost plenary jurisdiction. We
disagree. Paul argues that because the QDRO was not ambiguous or unenforceable the
trial court had no jurisdiction to modify the terms. Relying on Matter of Marriage of
Reinauer, 946 S.W.2d 853, 860 (Tex.App.-Amarillo 1997, pet. denied) (on reh'g), Paul
contends the court's modification was void and thus, could be raised for the first time on
appeal. We disagree that the trial court did not have jurisdiction and that its judgment and
2002 QDRO are void. 

 Although the court found that it had jurisdiction under sections 9.002, 9.006, and
9.008 of the Family Code, we find that sections 9.101(a) and 9.104 also apply. Section
9.104 provides that if a plan administrator determines that a domestic relations order does
not satisfy the requirements of a QDRO, the trial court retains continuing, exclusive
jurisdiction over the parties and their property to the extent necessary to render a QDRO. 
The Chevron manager who reviewed and qualified the QDRO testified by deposition that
Chevron did not accept the 1986 QDRO, and testified further that if the agreement letter
had been signed and returned to Chevron, the QDRO would have been accepted. Section
9.101(a) provides that a court that renders a final decree of divorce retains continuing,
exclusive jurisdiction to render an enforceable QDRO. 

 Although section 9.007 prohibits a court from altering the division of property
approved in a divorce decree, under section 9.006, the trial court had authority to enter a
further order to enforce the division of property made in the 1986 decree awarding fifty
percent of Paul's savings plan to Brenda. Thus, the trial court's action did not amount to
a substantive division of property. Points of error one and two are overruled.

 By point of error three, Paul contends the trial court erred in substantively changing
the terms of the decree under the doctrine of res judicata. Res judicata is an affirmative
defense that must be plead or is waived. Tex. R. Civ. P. 94; In Interest of Striegler, 915
S.W.2d 629, 640 (Tex.App.-Amarillo 1996, writ denied). By his live pleading, Paul did not
assert res judicata as a defense; thus, he has failed to preserve this complaint for appellate
review. See generally Carter v. Charles, 853 S.W.2d 667 (Tex.App.-Houston [14th Dist.]
1993, no writ) (holding that ex-husband's affirmative defense was waived for not being
presented to the trial court). Point three is overruled. 

 Relying on ERISA, Paul alleges by his fourth point of error and other assertions
throughout his brief that the trial court erred in giving retroactive effect to its clarification
order rather than distributing Brenda's share under the 1986 decree from the date of the
2002 QDRO. In support of his argument, Paul asserts ERISA's choice of law preemption. 
However, as Brenda points out, that preemption is an affirmative defense that must be
raised below or is waived on appeal. See Castillo v. Neely's TBA Dealer Supply, Inc., 776
S.W.2d 290, 292-94 (Tex.App.-Houston [1st Dist.] 1989, writ denied) (distinguishing choice
of forum preemption which may be raised for the first time on appeal). Paul did not plead
ERISA nor did he present any evidence at trial regarding ERISA. Thus, his choice of law
preemption contention is not before us. (7) Point of error four is overruled.

 By his fifth point of error, Paul complains that the trial court's assessment of interest
at the rate of ten percent in its 2002 judgment is erroneous and requests a remittitur and
reformation of the judgment. We disagree. Paul argues that under the 1986 decree the
parties' relationship was contractual and that section 304.002 of the Texas Finance Code
controls, which provides that "[w]hen no specified rate of interest is agreed on by the
parties, interest at the rate of six percent is allowed on . . . contracts . . . . In response, 
Brenda argues that under section 304.004 of the Finance Code, ten percent interest is
proper because suit was not filed for breach of contract but for enforcement of a judgment. 
Although the 1986 decree did not provide for any post-judgment interest, the ten percent
rate awarded to Brenda in the 2002 judgment from the date that judgment was signed until
paid is not erroneous. See Tex. Fin. Code Ann. § 304.003 (Vernon Supp. 2003). Point
of error five is overruled. 

 By point of error six, Paul asserts the trial court erred in reducing a QDRO to a
money judgment without additional service of process. We disagree. We note that Paul
failed to object before commencement of trial to a lack of service of process. See Tex. R.
App. P. 33.1(a); see also Ex Parte Linder, 783 S.W.2d 754, 758 (Tex.App.-Dallas 1990,
no pet.) (noting that failure to prove that an objection was made waived any complaint of
improper service). Citing Ackerly v. Ackerly, 13 S.W.3d 454 (Tex.App.-Corpus Christi
2000, no pet.), Paul argues that a request to reduce the QDRO to a money judgment is an
original action requiring service of citation; however, Ackerly involved a void default
judgment resulting from improper service of process. Here, after Brenda commenced the
underlying proceeding, Paul filed his original answer by which he entered a general denial,
asserted that Brenda's pleadings failed to state a cause of action, and specifically denied
that the original QDRO needed modification. Under Rule 121 of the Texas Rules of Civil
Procedure, an answer constitutes an appearance and dispenses with the necessity for the
issuance or service of citation. Ex Parte Linder, 783 S.W.2d at 758 (holding that a relator's
appearance at a contempt hearing purged any irregularity in service of process). Thus, we
find Paul's service of process argument without merit. Point of error six is overruled.

 By his seventh, eighth, and ninth points, Paul complains of specific dollar amounts
awarded to Brenda, erroneous calculations contrary to ERISA, a suggestion of remittitur
pursuant to Rule 46.3 of the Texas Rules of Appellate Procedure, a reversal and remand,
or reversal and rendition with proper recalculation and alternatively, a reversal and remand 
with instructions to the trial court on recalculation of its judgment. (8) For the reasons
expressed herein, we overrule these points.

 First, because Paul did not request findings of fact, the judgment of the trial court
implies all necessary findings to support it. IKB Industries, 938 S.W.2d at 445. Second,
deposition testimony from Chevron's team manager for QDRO processing testified without
objection to dollar amounts and distributions of the savings plan. Third, after the trial, but
before the hearing to enter judgment, Brenda's attorney wrote Paul's attorney enclosing
a proposed judgment awarding Brenda $87,050 in accordance with the court's findings. 
However, at the time of the hearing, Paul's attorney was unavailable even though notified
and judgment was entered without objection. Tex. R. App. P. 33.1(a). Finally, Paul's
request for recalculation under ERISA is waived as discussed under point of error four.
Points seven, eight, and nine are overruled.


 By motion and amended motion pursuant to Rule 44.4 of the Texas Rules of
Appellate Procedure, Brenda suggests that a correction ("legal housekeeping") in the 2002
QDRO is appropriate because as drawn, it might entitle her to more of the retirement
distribution than under the 1986 QDRO. Paul does not oppose Brenda's motion. Because
both parties agree that the retirement portion of the original QDRO was never at issue, we 
grant the amended motion and remand the QDRO signed September 11, 2002, to the trial
court with instructions to correct the retirement portion beginning at paragraph five to reflect
verbatim the language of the original QDRO regarding distribution of Brenda's fifty percent
of Paul's retirement plan, but not otherwise.

 Accordingly, the judgment signed September 4, 2002 awarding Brenda Brogdon
(Chance) $55,664 is affirmed.

 Don H. Reavis

 Justice



1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. Tex. R. App. P. 47.1.
3. Qualified Domestic Relations Order.
4. Employee Retirement Income Security Act of 1974.
5. Brenda's original divorce attorney died approximately three years after the divorce.
6. This amount reflects a portion of the money due Brenda after receiving $31,385
from the savings plan, with the remainder in the plan belonging to Paul.
7. We have not overlooked Paul's reply brief in which he concedes that he is raising
ERISA for the first time on appeal. However, his argument focuses on conflict of law
preemption which we have determined was waived for purposes of appeal.
8. (7) The trial court erred as a matter of law in awarding Brenda a proportionate
share of his first distribution from his employee savings plan inasmuch as the 1986 divorce
decree and QDRO and May 17, 2002, court findings awarded said distribution exclusively
to him as his separate property. (8) Because the trial court erred in its calculations as a
matter of preemptive ERISA law, as well as the terms of the 1986 decree of divorce, the
court of appeals is requested to file either a suggestion of remittitur, and reverse and
remand if it is not timely filed, or, alternatively, reverse and render via proper recalculation
of the amounts in the September 4, 2002 court order. (9) Alternatively, if the court of
appeals remands to the trial court for recalculation of its judgment, it should supply
additional instructions, in light of the uncertainty of the actuarial assumptions being
employed in the deposition evidence of non-attorneys being embraced by the trial court.